440

BLACKWOOD COAL & COKE CO. v. PHIL-
ADELPHIA & READING COAL &
IRON CO.

Patent Appeal No. 2998.

Court of Customs and Patent Appeals.
May 23, 1932.

Fraley & Paul, Frank B. Fox, and Henry N. Paul, Jr., all of Philadelphia, Pa., for appellant.

L. G. Miller, of Boston, Mass. (Merrell E. Clark, of New York City, and Emery, Booth, Varney & Townsend, of Boston, Mass., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in a trade-mark opposition proceeding, in which appellant appeals from a decision of the Commissioner of Patents which reversed a decision of the Examiner of Interferences; the Commissioner holding that the opposition of appellee should be sustained and that appellant was not entitled to the registration of the mark applied for by it.

On September 7, 1929, appellant filed in the Patent Office its application for the registration of a mark for coal which, quoting from said application, "consists in a plurality of red specks of irregular size on the surface of the lumps, no claim being made to the lump of coal per se." The application further states that the mark is affixed to the goods by spraying the same thereon.

On December 24, 1929, appellee filed notice of opposition to said application, alleging that, prior to the first date of use claimed by appellant of its mark, opposer adopted as a trade-mark for solid fuel "a coating of red color applied indiscriminately over all or a part of the surface of all or a part of the pieces of coal, * * * and ordinarily being irregular and discontinuous whereby portions of the natural surface of the piece of fuel are exposed and give a variegated appearance to the piece."

The notice of opposition also contained the usual allegations of use of said mark in commerce, confusing similarity of the marks, damage, etc. On May 7, 1930, said notice of opposition was amended in particulars not material to the issues here involved.

On January 29, 1930, appellant filed its answer to said notice of opposition, denying confusing similarity of the marks, and alleging priority of use by it of the color red on coal for trade-mark purposes.

Appellant took no testimony, but testimony was taken on behalf of appellee.

The Examiner of Interferences found that appellee, prior to the first date of use claimed by appellant, used upon coal a mark of a color which he defined as "purple applied indiscriminately thereover"; that subsequent to September 7, 1929, the date given appellant for first use of its mark, appellee used a specifically different mark, and he held accordingly that appellee here was unable to qualify under the language "owned and used by another" of the confusion-in-trade clause of section 5 of the Trade-Mark Act of February 20, 1905, as amended (15 USCA § 85), upon which it relied to negative the right of registration of appellant, and that the opposition should be dismissed, and that appellant was entitled to register its mark.

The Commissioner of Patents, upon appeal, reversing the decision of the Examiner, said: " * * * The evidence establishes the fact beyond any reasonable doubt that it was not only the intention of the opposer to mark its coal with the color red, but that coal sold prior to July 11, 1929, the date relied upon by the applicant, was in fact so marked."

It appears from the testimony that early in 1928 appellee decided to identify its anthracite Reading coal to the purchaser by the application of the color red thereto; that it employed the Stone & Webster Corporation, and through it a practicing chemist, to develop a material and a means of application to mark the coal; that such material was developed and applied to coal which was sold in commerce in June, 1928. A sample of the coal so colored was offered in evidence, and is before us. It further appears from the testimony that, in a publication issued in September, 1928, appellee's mark was described as "purple" in color, but that appellee did not furnish such description and had no part in the publication; that the coloring matter so applied was unsatisfactory because it was not durable, whereupon other experts were employed to develop a durable material which was accomplished; this second material, the color of which is conceded to be a shade of red, being first applied to coal by appellee in December, 1929. A sample of said coal so colored was also offered in evidence and is before us.

It is well established that, in an opposition proceeding, the Patent Office tribunals may dispose of any question relating to the proposed registration that might properly be considered in an ex parte case. California Cyanide Co. v. American Cyanamid Co., 40 F.(2d) 1003, 17 C. C. P. A. 1198.

Upon the oral argument before us, while it was conceded that, should we find that appellant's mark was not a valid trade-mark irrespective of the confusion-in-trade clause, we might properly so hold and affirm the decision of the Commissioner upon that ground, counsel for both parties urged that this question be not here determined, for the reason that they were not prepared to argue before us the question of whether or not the marking of coal with color, without forming a distinctive and uniform design, is an exception to the rule that color alone cannot be the subject of a valid trade-mark.

It appears to us that neither party hereto has any distinctive design applied to its coal, because it seems clear that by the method of spraying which both parties use there is no uniformity of design whatever, and the spots appearing upon one body of coal will not be the same as the spots appearing upon another, applied by the same party, and therefore it would seem that, under the general rule that color alone may not be relied upon for validity, neither of the parties has a valid trade-mark.

However, for the purposes of this case alone, assuming, without deciding, that colored spots applied to coal may be a valid trade-mark, we have no hesitation in finding that the mark of appellant so nearly resembles the mark used by appellee, prior to the first use by appellant of its mark, both being applied to identical goods, as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers.

If such a mark is subject to ownership, then it is owned by appellee, and for the reason stated appellant's mark should not be registered. If appellee does not own its mark, then neither does appellant own its mark, and neither could be legally registered.

Much has been said in the briefs of the parties, and upon oral argument, as to the technical definitions of purple and red. Appellant contends that, because red is found at one end of the spectrum and purple at the other, there is no similarity between them. As heretofore indicated, the Examiner found that the color used by appellee, prior to appellant's use of its red mark, was purple; the Commissioner found that it was red. We have carefully examined the color which was first used by appellee, as shown by the sample in evidence, and find it unnecessary to determine whether the color so shown should be denominated a shade of red or a shade of purple. It is sufficient to say that, in our opinion, whatever the correct name of the color may be, it is, when applied to coal, confusingly similar to the color red.

That appellee for a time discontinued the use of its mark while experimenting for a more durable color material, and resumed its color marking of coal subsequent to appellant's first use, we think is immaterial. This did not constitute abandonment of its mark. Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60. Neither do we think the fact that there was some difference between the color of appellee's later and earlier marks is material, because the color last used by appellee is within the range of color for which it would be entitled to pro-

tection if the color first used was a valid trade-mark.

We might have contented ourselves with holding, without further discussion, that our recent decision in the case of A. Leschen & Sons Rope Co. v. American Steel & Wire Co., 55 F.(2d) 455, 19 C. C. P. A. ——, governs the case at bar, because it was there held by a majority of the court that a mark consisting of a silver strand in wire rope was likely to cause confusion with a red strand in wire rope. We think there is greater similarity between the marks in the case at bar than existed in the marks involved in the case above cited.

For the reasons stated, the decision of the Commissioner of Patents is affirmed.

Affirmed.

GRAHAM, Presiding Judge (specially concurring).

I concur in the conclusion on the ground that the mark of applicant is not such a mark as is entitled to registration under the law. My views on this subject are set forth quite fully in the special concurring opinion in A. Leschen & Sons Rope Co. v. American Steel & Wire Co., 55 F.(2d) 455, 19 C. C. P. A. ——.